UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| In re: | |
| | |
| PHILLIP GUERTLER    and | Chapter 13 |
| CINDY LOUISE GUERTLER, | |
| | |
| Debtors. | Case No. 14-50483 |

**MEMORANDUM OPINION OVERRULING OBJECTION TO AMENDED CLAIM 4**

Before the Court is Phillip and Cindy Louise Guertler's objection to amended proof of claim 4 filed by DuPont Community Credit Union. The Guertlers assert that Mrs. Guertler has no liability on the debt associated with the amended claim and therefore the amended claim should be disallowed as a joint unsecured claim but allowed as a claim for a debt solely owed by Mr. Guertler. As more fully set forth below, the Court overrules the Guertlers' objection.

**PROCEDURAL HISTORY**

On April 30, 2014, Phillip and Cindy Guertler filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code.[1] On May 21, 2014, DuPont Community Credit Union ("DuPont") timely filed a proof of claim, asserting it was the holder of a debt secured by a judgment lien against Mr. Guertler in the amount of $7,016.83.[2] Shortly thereafter, DuPont amended its claim to reflect an unsecured debt for a jointly held MasterCard[3] credit card.[4] Counsel for the Guertlers lodged an objection to the amended claim on September 29, 2014,

---

[1] *See* Chapter 13 Pet., ECF Doc. No. 1 (Apr. 30, 2014).

[2] *See* Claim 4-1 (May 21, 2014).

[3] There is confusion on the record whether the credit card was a Visa Platinum card or a MasterCard; however, according to the parties, they agree it was a MasterCard. *See* Tr. at 38, 85, ECF Doc. No. 39 (Dec. 23, 2014) [hereinafter *Transcript*].

[4] *See* Claim 4-2 (July 8, 2014).

asserting that Mr. Guertler alone was liable on the debt and setting a hearing on the objection for November 5, 2014.[5] Prior to the hearing, DuPont filed a response to the Guertlers' objection, denying that Mr. Guertler is the sole obligor on the debt and arguing that both debtors are liable for the debt because both debtors signed the credit card agreement.[6]

At the November 5 hearing, the parties requested an evidentiary hearing. Accordingly, the Court continued the hearing and set the evidentiary hearing for December 3, 2014. At the December 3 hearing, both parties appeared and presented evidence to the Court. Following the hearing, the Court took the matter under advisement and directed the parties to file briefs by January 13, 2015.[7] The Court's findings are detailed below.

## FACTUAL BACKGROUND

Phillip and Cindy Guertler were married in March of 2000.[8] Prior to their marriage, Mrs. Guertler maintained a personal membership account with DuPont, with an associated member account number[9] containing the last four digits of 0272.[10] After their marriage, Mr. Guertler

---

[5] *See* Objection to Am. Claim 4, ECF Doc. No. 15 (Sept. 29, 2014).

[6] *See* Resp. to Objection to Am. Claim 4 at 1–2, ECF Doc. No. 23 (Oct. 9, 2014).

[7] *Transcript*, *supra* note 3, at 95.

[8] *Id.* at 15.

[9] The evidence in the record of this case reflects myriad account and loan identifying numbers. The Court understands this circumstance as a consequence of the credit union's organizational practices. First, any person wishing to obtain credit or maintain an account at DuPont must apply for a membership account number. *See id.* at 42–43. Within each of these membership accounts, the individual who applies for the account is considered the "primary member," but there may also be a "secondary member" as well. *Id.* Within each membership account, the primary member may apply for various types of loans and credit accounts, including vehicle loans, land loans, credit cards, checking and savings accounts, personal loans, and overdraft protection. *See id.* at 58 Each of these types of accounts has its own, unique identifying suffix the credit union uses to differentiate between the various loans under each individual membership account. *Id.* at 58–59. Only primary members, however, can obtain individual loans under their membership account, so if a secondary member wishes to obtain his or her own individual loan, he or she must open another account with himself or herself as the primary member. *Id.* at 43. Furthermore, a secondary member's presence does not necessarily mean that the secondary member is jointly liable on a particular credit account or loan within the primary member's account. *Id.* at 42–43.

[10] *Id.* at 16.

2

joined Mrs. Guertler's personal account as a secondary member in order for the couple to maintain a joint checking and savings account thereunder.[11] The Guertlers used this particular membership account for their personal finances as well as for a community organization, for which the couple served as leaders.[12] Under this membership account, Mr. and Mrs. Guertler had a savings account, a checking account, a vehicle loan, and a land loan;[13] however, neither spouse could locate any record of having a credit card associated therewith.[14] DuPont's records corroborated the absence of a credit card account on this particular membership account.[15]

Also after the Guertlers' marriage, Mr. Guertler began operating a sole proprietor construction business called Alpha Omega Construction.[16] Mrs. Guertler worked as bookkeeper for Alpha Omega.[17] In order to keep his business finances separate from his and Mrs. Guertler's personal finances, Mr. Guertler decided to open a separate membership account at DuPont.[18] This business account has an account number with the last four digits of 0768.[19] Mr. Guertler was the primary member on this account, and Mrs. Guertler was listed as a secondary member.[20] Under the business account, Mr. Guertler opened a checking account, savings account, and

---

[11] *Id*. at 12, 25.

[12] *Id.* at 12.  The couple served as leaders of the Fellowship of Christian Athletes during this period.  *Id.*

[13] *Id.* at 12–13.

[14] *See id.* at 16–17, 33.

[15] *Id.* at 60.

[16] *Id.* at 16, 25.

[17] *Id.* at 17.

[18] *See id*. at 25.

[19] *Id.* at 12, 59.

[20] *Id.* at 59.

3

overdraft protection, and he obtained a vehicle loan and personal loan as well.[21] Also on this account, Mr. Guertler applied for a MasterCard credit card on behalf of the business.[22] DuPont approved his application and supplied him with a credit card in the name of Alpha Omega Construction.[23] This MasterCard, and the liability thereon, is at the heart of the current controversy before the Court.

In 2011, Alpha Omega Construction's MasterCard account went into default, so DuPont filed a warrant in debt against Mr. Guertler in the Waynesboro General District Court.[24] On February 17, 2011, the general district court issued judgment against Mr. Guertler in favor of DuPont in the amount of $7,155.62 at 9.9% interest for the unpaid balance on the MasterCard.[25] DuPont explained that it filed the warrant in debt at that time solely against Mr. Guertler and not also against Mrs. Guertler, because its internal records did not include her name as being associated with the account.[26] DuPont contended the software program it uses only has space for two names associated with each account.[27] Thus, in this case, the only two names that appeared in the system were "Alpha Omega Construction" and "Phillip Guertler."[28] In fact, DuPont

---

[21] *Id.* at 60.

[22] *Id.* at 25.

[23] *Id.* at 25, 32–33.

[24] *See id.* at 27, 80.

[25] *See* Ex. 2, ECF Doc. No. 34-2 (Nov. 25, 2014).

[26] *Transcript, supra* note 3, at 43–44, 52, 72–73.

[27] *Id.*

[28] *Id.*

4

admits that its internal systems did not list Mrs. Guertler as jointly liable on this account until May 15, 2014.[29]

At the December 3, 2014, hearing, the Guertlers asserted that neither one of them intended for Mrs. Guertler to be liable for any of the debts accrued on the MasterCard account.[30] Although they acknowledged Mrs. Guertler signed as a secondary member on the 0768 membership account and as an authorized user on the credit card, they claim that she only did so in order to authorize her to use the MasterCard to incur expenses on behalf of the construction business.[31] Furthermore, the Guertlers argue that the only credit card application in DuPont's possession that has Cindy Guertler's signature on it contains the personal membership account number (0272) rather than the business account number (0768).[32] Thus, the Guertlers suggest that the MasterCard joint agreement is not for the account in dispute but instead for a different card.[33] Finally, the Guertlers contend that DuPont's failure to include Mrs. Guertler on the warrant in debt on the MasterCard balance bars DuPont from now asserting the Guertlers are jointly liable.[34]

In support of this position, the Guertlers provided the Court with five exhibits. The Guertlers' first exhibit (Exhibit 1) is an account summary from DuPont's own internal computer records dated May 6, 2014, which does not list any party as a joint obligor on the account.[35]

---

[29]    *See id.* at 40.  DuPont admitted that its internal records were amended during the bankruptcy case.  *See id.* at 41–42.

[30]    *Id.* at 25.

[31]    *Id.* at 17, 31–32.

[32]    *See id.*at 83–84.

[33]    *See id*. at 84–85.

[34]    *See id.* at 5; Br. in Supp. of Debtor's Objection to Am. Claim 4, ECF Doc. No. 41 (Jan. 13, 2015).

[35]    Ex. 1, ECF Doc. No. 34-1 (Nov. 25, 2014).

Exhibit 2 is the warrant in debt DuPont filed against only Mr. Guertler in the Waynesboro General District Court.[36] Next (Exhibit 3) is the abstract of judgment against only Mr. Guertler.[37] Exhibit 4 is the MasterCard agreement DuPont included in the business account's file but has the Guertlers' personal member account number (0272) handwritten on it.[38] Finally, the Guertlers' Exhibit 5 is DuPont's amended proof of claim with an amended internal account summary, dated May 15, 2014, which a DuPont employee had updated to report Mrs. Guertler as a joint obligor on the credit card account.[39]

Conversely, DuPont, while acknowledging the obvious flaws in Alpha Omega Construction's MasterCard documentation, argued that the attendant records and circumstances support its position that both spouses are liable on the MasterCard debt.[40] Specifically, DuPont claimed the internally generated cover page for the MasterCard showing the 0768 account number (Exhibit G)[41] and the credit card approval sheet signifying a joint account (Exhibit H)[42] demonstrate that the spouses actually signed up for a joint credit card. Furthermore, DuPont submitted Mr. Guertler's membership application for member account 0768 with Mrs. Guertler as a secondary member (Exhibit A)[43] as showing that the joint credit card is associated with a joint membership account. In addition, DuPont produced evidence of another collection action

---

[36]    Ex. 2, ECF Doc. No. 34-2 (Nov. 25, 2014).

[37]    Ex. 3, ECF Doc. No. 34-3 (Nov. 25, 2014).

[38]    Ex. 4, ECF Doc. No. 34-4 (Nov. 25, 2014).

[39]    Claim 4-2 (July 8, 2014); *Transcript*, *supra* note 3, at 39.

[40]    *See generally Transcript*, *supra* note 3, at 8–9, 86–93 (detailing the coincident facts and evidence suggesting the Guertlers signed as joint applicants for the MasterCard credit card).

[41]    Ex. G at 1, ECF Doc. No. 33-7 (Nov. 25, 2014).

[42]    Ex. H, ECF Doc. No. 33-8 (Nov. 25, 2014). The collateral code "L14" on Exhibit H signifies a joint account. *Transcript*, *supra* note 3, at 68.

[43]    Ex. A, ECF Doc. No. 33-1 (Nov. 25, 2014).

associated with account 0768 in which DuPont pursued both Mr. and Mrs. Guertler and in which neither spouse challenged the joint liability, namely a warrant in debt DuPont field against both Mr. and Mrs. Guertler in the amount of $138.35 at 12% interest for an unpaid debt on an overdraft credit account (Exhibit F).[44] DuPont also emphasized the Guertlers' inability to provide evidence of the existence of any credit card on their personal member account.[45] Finally, DuPont claimed that the fact it filed the warrant in debt against only Mr. Guertler does not bar it from now claiming the debt is actually joint against both spouses.[46]

Ultimately the dispute turns on two questions: First, did Mrs. Guertler sign as a joint obligor on this MasterCard account? Second, does DuPont's pursuit of Mr. Guertler alone on the warrant in debt affect its ability to now claim both spouses jointly owe the debt?

## CONCLUSIONS OF LAW

*a) Claim Validity and the* Falwell *Standard*

At the outset of the December 3 hearing, the parties presented short opening statements and requested the Court make an initial determination of the current procedural posture of the case in accordance with the burden-shifting framework set out in *Falwell v. Roundup Funding LLC (In re Falwell)*, 434 B.R. 779 (Bankr. W.D. Va. 2009), and Federal Rule of Bankruptcy Procedure 3001.[47] In *Falwell*, the court held that a proof of claim filed with supporting documentation as required by Federal Rule of Bankruptcy Procedure 3001(c) is prima facie valid. *Falwell*, 434 B.R. at 783. Thereafter, if a party in interest wishes to challenge the proof of claim's validity, he or she must object to the proof of claim and produce evidence of "equally

---

[44]   Ex. F, ECF Doc. No. 33-6 (Nov. 25, 2014).

[45]   *See Transcript*, *supra* note 3, at 86–89.

[46]   *See id.* at 90–91.

[47]   *Id.* at 4–7.

7

probative value in rebuttal." *Id.* at 784. If the objecting party produces sufficient rebuttal evidence, the burden then shifts back to the claimant to prove the existence and validity of the debt by a preponderance of the evidence. *Stancill v. Harford Sands Inc. (In re Harford Sands Inc.)*, 372 F.3d 637, 640 (4th Cir. 2004).

Based on the evidence in the record, the Court held that DuPont properly supported its claim with documentation, and, therefore, the claim was prima facie valid.[48] The Court went on to find, however, that the Guertlers' objection and accompanying evidence sufficiently called into question the validity of the claim.[49] Thus, under the *Falwell* framework, the burden shifted back to DuPont, which now has the burden of proving by a preponderance of the evidence that Mr. and Mrs. Guertler are jointly liable on the MasterCard debt.

*b) Merger and Bar*

Under Virginia law, once a court enters judgment on a contract, the contract upon which a plaintiff brings a suit merges into the judgment, and that plaintiff "could not afterwards maintain a suit for another recovery under that contract." *Sands v. Roller*, 86 S.E. 857, 858 (Va. 1915); *see also Bazzle v. Bazzle*, 561 S.E.2d 50, 55 (Va. Ct. App. 2002) ("When a cause of action has been reduced to a judgment, the cause of action is merged into the judgment and cannot form the basis for future suits between the parties."). When the original contract, however, is a joint contract made by co-promisors and the judgment is obtained only as to one of the co-promisors, the application of the merger doctrine becomes more nuanced.

"At common law, a judgment . . . by a creditor against one of two or more persons on a joint contract was a bar to a subsequent action against other obligors who were not party defendants in the original action." *Equity Investors, Ltd. v. West*, 425 S.E.2d 803, 805 (Va.

---

[48] *Transcript, supra* note 3, at 7.

[49] *Id.*

8

1993). The merger of the contract into the judgment extinguished any joint liability of those who were not parties in the original action. *Id.* The Virginia General Assembly, however, has eliminated the application of the common law merger doctrine by enacting particular statutory exceptions. *See id.* (recognizing a statutory exception to the merger doctrine for partners in a partnership under Virginia's version of the Uniform Partnership Act); *see also Cahoon v. McCullock*, 23 S.E. 225, 225 (Va. 1894) ("These [common law merger] rules have been essentially changed by statutes enacted by the legislature.").

The Virginia General Assembly has abolished this common law rule for actions on contracts made by several persons. Virginia Code § 8.01-30 states:

> Upon all contracts hereafter made by more than one person, whether joint only or joint and several, an action may be maintained and judgment rendered against all liable thereon, or any one or any intermediate number, and if, in an action on any contract heretofore or hereafter made, more than one person be sued and process be served on only a part of them, the plaintiff may dismiss or proceed to judgment as to any so served, and either discontinue as to the others, or from time to time as the process is served, proceed to judgment against them until judgment be obtained against all. Such dismissal or discontinuance of the action as to any defendant shall not operate as a bar to any subsequent action which may be brought against him for the same cause.

Va. Code Ann. § 8.01-30 (West 2014). Therefore, no merger occurs to bar an action against a co-promisor of a contract until a judgment has been entered as to the liability of all co-promisors. *See id.*; *see also Cahoon*, 23 S.E. at 225 ("Separate motions may be made and judgments rendered from time to time against one or more of the whole number of obligors, whether the obligation be joint, or joint and several, without the cause of action being merged in any or all of such judgments as to the other obligors, until there is a judgment against every person liable, or his personal representative."); Restatement (Second) of Contracts § 292(1) (1981) ("A judgment against one or more promisors does not discharge other promisors of the same performance unless joinder of the other promisors is required . . . .").

9

When a creditor obtains a judgment against only one co-promisor to a contract, that judgment is only enforceable as to the co-promisor against whom the judgment was obtained. The creditor may pursue only that specific co-promisor to collect on the judgment. Further, once that specific co-promisor's obligation has been reduced to judgment, the creditor may not pursue that specific co-promisor upon the underlying contract. This underlying joint contract upon which the court entered judgment, however, does not merge into the judgment and thus does not operate to bar the promisee from enforcing the contractual obligations against the remaining co-obligors. *See* Va. Code Ann. § 8.01-30.

## APPLICATION OF THE EVIDENCE

*a) The Evidence Supports a Finding the MasterCard Debt Is a Joint Unsecured Debt*

The evidence is uncomplicated. All parties agree that there was only one credit card issued by DuPont to the Guertlers. The only credit card agreement provided by the parties contains the signatures of both Mr. and Mrs. Guertler. The credit card application approval sheet indicates that the credit card was for a joint account and contains the social security numbers of both Mr. and Mrs. Guertler.[50] No evidence has been offered that any other credit card has been *issued* to the Guertlers which could serve as a basis for this debt. After assessing the exhibits in the record and the testimony at the hearing, the Court finds it more likely true that both Mr. and Mrs. Guertler signed the credit card agreement for the MasterCard debt represented by claim number 4. As such, the Court concludes that the MasterCard debt is a joint obligation of both Mr. and Mrs. Guertler.

*b) The Judgment Against Mr. Guertler Does Not Bar Collection Against Mrs. Guertler*

---

[50] The credit card application reveals the social security number of Mrs. Guertler as "secondary name," and references that the account names are "Philip and Cindy Guertler." Ex. G at 1, ECF Doc. No. 33-7 (Nov. 25, 2014).

Pursuant to Virginia Code section 8.01-30, although DuPont reduced its claim against Mr. Guertler to judgment, DuPont is not barred under Virginia law from pursuing its claim against Mrs. Guertler on the same underlying contract. Specifically, notwithstanding that the MasterCard agreement served as a basis for the judgment against Mr. Guertler, the MasterCard agreement, as a joint contract, did not merge into the judgment. Instead, the judgment barred DuPont from pursuing only Mr. Guertler on the contract; it did not bar collection under the contract against the joint obligor, Mrs. Guertler. Thus, DuPont retained its contractual rights and remedies against Mrs. Guertler.

*c)  Amended Claim Number 4 Is a Joint Unsecured Claim*

At this point, the Court has determined that DuPont has a judgment debt against Mr. Guertler arising from the MasterCard agreement, and a credit card debt against Mrs. Guertler arising from the same MasterCard agreement. The Guertlers argue that the judgment debt against Mr. Guertler individually has the effect of severing the debt from joint and rendering it a separate individual debt. According to the Guertlers, even if Mrs. Guertler is liable to DuPont on the MasterCard credit card, her liability is separate from the judgment debt against Mr. Guertler simply because she was not a party to the judgment. The Guertlers argue then that the liability of Mr. and Mrs. Guertler to DuPont arising from the same joint MasterCard agreement cannot be a joint debt for collection purposes and cannot be satisfied by equity in property held as tenants by the entirety.[51] The Guertlers argument, however, fails to address the effect of Virginia Code section 8.01-30. The statute has provided a remedy to creditors holding debts made by multiple parties whether joint or joint and several; however, the statute authorizing collection does not transform the underlying obligation nor does it create an additional, independent basis for

---

[51]  The parties agree that Mr. and Mrs. Guertler have equity in a martial residence that may satisfy the claims of joint creditors but which equity is protected from collection by individual creditors. *See* Br. in Supp. of Debtor's Objection to Am. Claim 4 at 1, ECF Doc. No. 41 (Jan. 13, 2015).

11

liability. Indeed, payments made by the judgment debtor will credit the obligation and reduce the liability of the joint party to the contract. If the debts were truly independent, separate debts, satisfaction by payment of one debt would not directly affect the second debt.

At this juncture, the judgment against Mr. Guertler did not, and cannot, attach to the martial residence. Consequently, it is not a lien against the martial residence or other property owned by husband and wife as tenants by the entirety. *See Sumy v. Schlossberg*, 777 F.2d 921, 926–29 (4th Cir. 1985). DuPont does not claim to be secured or have a judgment lien on any property in this bankruptcy case. As such, in this chapter 13 case, the debt owed to DuPont associated with claim number 4-2 is unsecured. As explained above, the Court concludes that claim number 4-2 represents a joint debt owed by Mr. and Mrs. Guertler. For these reasons, claim number 4-2 should be treated in the manner of a joint unsecured claim under the chapter 13 plan. Upon entry of a discharge order in this case, the judgment should be marked discharged.

## CONCLUSION

The Court **OVERRULES** the Debtors' objection to claim 4-2. Based on a preponderance of the evidence, the Court concludes that both Mr. and Mrs. Guertler are jointly liable for the debt arising from the joint MasterCard agreement. The judgment obtained against only Mr. Guertler has no effect on the joint liability of the Debtors on the debt for which claim 4-2 is based. The Court will contemporaneously issue an order consistent with the findings and ruling of this opinion.

Date Entered:    2/20/15

*Rebecca B. Connelly*
Rebecca B. Connelly
U.S. Bankruptcy Judge

12